IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

BUDDY RYNDERS                                                PLAINTIFF

        v.                    Civ. No. 09-6088

LARRY WILLIAMS, in his individual
and official capacity as Judge
of Garland County, Arkansas                                 DEFENDANT

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court are Defendant's Motion for Summary Judgment (doc. 15), Defendant's supporting documents (docs. 16-17), Plaintiff's Response (doc. 22), and Plaintiff's supporting documents (docs. 23-24). For the reasons discussed below, the Defendant's Motion (doc. 15) is **GRANTED**.[1]

Plaintiff Buddy Rynders brings this action pursuant to 42 U.S.C. § 1983, the Arkansas Civil Rights Act of 1993 (the "ACRA"), the Family Medical Leave Act (the "FMLA"), and the Arkansas felony-tort statute, alleging Defendant Larry Williams terminated Plaintiff's employment with the Road Department of Garland County, Arkansas (the "Road Department") in retaliation for and in violation of his State and Federal Constitutional rights. Defendant is sued in his individual capacity and his official capacity as Judge of Garland County, Arkansas.

Jurisdiction is proper under the general federal question

---

[1]  The Court notes that dispositive motions were due by July 29, 2010. Both parties requested and were granted extensions in connection with this motion; thus, the motion only became ripe for the Court's consideration fourteen (14)

statute, 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

**I.   Background**

Defendant, in his capacity as County Judge, has duties and responsibilities to operate the Road Department, which provides and maintains the highway system for Garland County.  The day to day operations of the Road Department are delegated to the Road Commissioner, who during Plaintiff's employment was Bobby Maughan. The Assistant Road Commissioner was Jerry Lampo.   The Road Commissioner manages and supervises the Road Department employees, and has the authority to hire and fire employees.

Plaintiff began part-time employment with the Road Department on June 8, 2003, and started full-time employment on August 2, 2005.  On April 6, 2006, Plaintiff was involved in an incident with three (3) other Road Department employees.  Plaintiff filed charges against two of the employees, and a warrant was issued.   The warrant was later recalled and the resulting charges dropped. Plaintiff contends his involvement with the incident caused those two employees to harass him.   Plaintiff contends he spoke to Defendant about the harassment, but no action was taken, but rather Defendant expressed his disappointment in Plaintiff for bringing it up.  He advised the Plaintiff to keep quiet, and advised that he had discussed the matter with the Chief Prosecuting attorney and

---

days prior to trial.

together they jointly decided to not prosecute the two employees.

Following the April 2006 incident, Plaintiff found drugs he suspected belonged to the employees involved in the earlier incident, and turned them over to the Assistant Road Commissioner. Plaintiff contends as a result, he was subject to further harassment by the employees. Plaintiff contends that Road Department personnel, including the Assistant Road Commissioner, witnessed on more than one occasion threats by the employees against Plaintiff, but never acted to stop the harassment. Plaintiff alleges the harassment included hiding of his time cards and even death threats, and that these incidents took place on a regular basis over a period of some two years.

On or about December 17, 2007, a local newspaper published a letter Plaintiff wrote to the editor. The letter, among other things, was critical of the Quorum Court and the Quorum Court's Finance Committee. The letter mentioned Defendant, and indicated he had asked for raises (for Garland County employees) and had been turned down.

Plaintiff contends that sometime in 2008, he began seeing a physician for a breathing disorder that he relates as a side effect of blood pressure medication he was taking. On September 12, 2008, Plaintiff was advised in writing by the Road Commissioner that he had been late for work thirteen (13) times the month prior (August 2008), and seven (7) times so far in September 2008. (doc. 16,

3

att. 4).    Plaintiff was notified that his tardiness was unacceptable and would result in disciplinary action if continued.

On January 13, 2009, the Assistant Road Commissioner issued a letter to Plaintiff which recited that he had been late for work fifty-two (52) times in 2008, absent twenty (20) days for sickness in 2008, with seven (7) of the absences without paid sick leave. (doc. 16, att. 5).    In addition, the letter placed Plaintiff on three (3) days paid suspension for "abuse of sick time and persistent tardiness to work", and requested a written reply to the allegations.    (doc. 16, att. 5).    On January 14, 2009, Plaintiff submitted a letter to the Assistant Road Commissioner requesting additional time to respond to the allegations, copies of his time cards, and documentation of tardiness or absences.    (doc. 23, att. 9).    No correspondence was directed by the Plaintiff to the Road Department following the January 14, 2009, letter.

On or about January 15, 2009, Plaintiff met with Defendant. Plaintiff contends Defendant told him he was being fired because of his letter to the newspaper editor criticizing the Finance Committee.    On January 16, 2009, the Assistant Road Commissioner extended Plaintiff's suspension.    (doc. 16, att. 7).    On January 20, 2009, Plaintiff received a letter from the Assistant Road Commissioner which terminated him.    (doc. 16, att. 8).

Plaintiff contends that his absences and tardiness were due in large part because of his health condition, and in part to his time

4

card being secreted, and by the employees' harassment.  Plaintiff also contends he notified Road Department personnel about his health condition, and requested FMLA leave paperwork, but it was never received.  Plaintiff never submitted any paperwork concerning any FMLA leave request.

## II.  Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*.  The court must view the facts and inferences from the facts in the light most favorable to the non-moving party, and the burden is placed on the moving party, to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Nat'l Bank of Commerce of El Dorado, Arkansas v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999).

Once the moving party has met this burden, the non-moving party may no longer rest on the allegations in its pleadings, but must set forth specific facts by affidavit and other evidence, showing that a genuine issue of material fact exists. *See Fed. R. Civ. P. 56(e); City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988).  In order to withstand

Defendant's motion for summary judgment, Plaintiff must substantiate his allegations with "sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Gregory v. Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992).

Entry of summary judgment resting on qualified immunity is appropriate if, viewing the record in the light most favorable to the non-moving party and affording him all reasonable inferences, no genuine issue of material fact exists regarding whether the officials' actions, even if unlawful, were objectively reasonable in light of the legal rules that were clearly established at the time the actions were taken. *See Anderson v. Creighton*, 483 U.S. 635 (1987) (internal citations omitted).

**III. Discussion**

  **A.    Qualified Immunity – § 1983 and ACRA Individual Capacity Claims**

Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982). "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). County Judges, as government officials, have qualified

immunity from liability in their individual capacity unless they violate a clearly established right of which a reasonable person would know. *Harlow,* 457 U.S. at 818-19.

The analysis for qualified immunity first requires the Court to determine whether a Constitutional right was violated. *Davis v. Hall*, 375 F.3d 703 (8th Cir. 2004). If that threshold question is answered in the negative, we need not proceed further, as the defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (8th Cir. 2001). If a Constitutional violation "could be made out on a favorable view of the parties' submissions," we proceed to the second step and determine whether the right was clearly established. *Id.*

Plaintiff contends he was terminated in retaliation for exercising his free speech rights pursuant to the First Amendment. Specifically, Plaintiff claims Defendant terminated him in retaliation for his participation in the criminal proceedings against Road Department employees, and for writing his letter to the newspaper editor. Plaintiff's claims therefore hinge on whether Defendant's alleged actions resulted in his termination. If not, Plaintiff has failed to demonstrate the Defendant violated any Constitutional right, and Defendant is entitled to qualified immunity against Plaintiff's claims.

Viewing the facts in a light most favorable to the Plaintiff, the Court cannot find Defendant terminated Plaintiff for his

involvement in the criminal proceedings or in the writing of the letter to the editor. There is no indication that Defendant was in any way responsible for the disciplinary actions, including warnings and suspension, taken against Plaintiff that led to his termination. The evidence before the Court is that Plaintiff was terminated for his poor attendance at work. The evidence further indicates that Plaintiff does not dispute the accuracy of the attendance reporting, but argues that the absences and tardies were excused, i.e., they were due in part because of his health condition and in part because of the harassment. Plaintiff's argument however does not undermine Defendant's qualified immunity defense.

Plaintiff was late for work fifty-two (52) times, and absent twenty (20) days in 2008. There is no evidence submitted that any significant number of the absences and tardies were authorized either prior to or after the occurrences. The evidence further reflects Plaintiff received notices and warnings about his poor attendance. The September 2008 letter indicated that if Plaintiff's poor attendance continued it would result in disciplinary action. The evidence also indicates that between the September 2008 letter and the January 2009 letter, Plaintiff continued to be both absent and tardy, with very few of these occurrences being either authorized or excused.

It was within Defendant's authority and discretion to

terminate Plaintiff due to excessive tardiness and absences, and the Court finds that no material facts are in dispute that the Defendant terminated Plaintiff on these grounds.[2]   Viewing the evidence in the light most favorable to the Plaintiff, the Court concludes Plaintiff was not terminated in retaliation for exercising his First Amendment rights.  Defendant, therefore, is entitled to qualified immunity.

Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's claims against Defendant in his individual capacity pursuant to 42 U.S.C. § 1983 and the ACRA is **GRANTED** and these claims are **DISMISSED WITH PREJUDICE.**

### B.   § 1983 and ACRA Official Capacity Claims

An analysis under § 1983 is required based on Plaintiff's retaliation claim brought against Defendant in his official capacity.  *Brandon v. Holt*, 469 U.S. 464, 472-73 (1985) (doctrine of qualified immunity shields officials acting only in their individual capacities); *see also W.B. v. Matula*, 67 F.3d 484, 499 (3rd Cir. 1995) (any claims against Defendant in his official capacity may not be defended against on the basis of qualified immunity).  *Id.*  Furthermore, any claims against Defendant in his official capacity are essentially claims against the municipality, i.e., Garland County.

---

[2]   The evidence reflects the disciplinary actions taken toward Plaintiff, including termination, were the exercises of the Road Department's authorities, duties, and discretion, and independent of Defendant Larry Williams.

9

The Eighth Circuit has held that a district court commits error when it grants summary judgment on an issue not raised or discussed by the parties. *See Heisler v. Metropolitan Council*, 339 F.3d 622, 631 (8th Cir. 2003) (citations omitted). The Eighth Circuit however has stated that "it would be an exercise in futility and a waste of judicial resources to reverse a grant of summary judgment on an issue not properly raised in the summary judgment motion if the district court's findings on properly addressed issues foreclose the unraised issue." *Id.* at 631-32 (*signaling Interco Inc. v. Nat'l Sur. Corp.*, 900 F.2d 1264, 1269 (8th Cir. 1990) (affirming district court's grant of summary judgment on claim not raised by the parties where the claim was dependent on a claim properly dismissed by the court).

Section 1983 provides "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law." *42 U.S.C. § 1983*. The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *Wyatt v. Cole,* 504 U .S. 158, 161 (1992).

A county may be sued directly under § 1983, or through

10

official capacity claims, only where "the action that is alleged to be unconstitutional implements or executed a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the [county]." *Kuha v. City of Minnetonka*, 365 F.3d 590, 603-604 (8th Cir. 2003) (*citing Monell v. Dep't Social Servs.*, 436 U.S. 658, 690 (1978)).  When the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury then the government as an entity is responsible under § 1983.  *Monell*, 436 U.S. at 678-79.

Defendant argues summary judgment should be granted on Plaintiff's First Amendment retaliation claims because termination was based solely on his poor attendance record, and Plaintiff's exercise of his Constitutional rights was not a factor.  Defendant further argues that claims pursuant to the ACRA should also be dismissed because it is "merely a duplication of the Federal Civil Rights Claims."  (doc. 16).  Defendant does not argue for summary judgment under a § 1983 analysis, including the lack of pleadings or evidence concerning Defendant's "custom or usage" relating to the termination of Plaintiff for exercising his Constitutional rights.  The Court, nevertheless, is compelled to make the § 1983 analysis, and finds it is vested with authority to grant summary judgment on Plaintiff's retaliation claims based on a lack of "custom or usage".  *See Interco Inc.*, 900 F.2d at 1269; *see also*

11

*Kuha*, 365 F.3d at 603-604 (holding "municipalities cannot be held liable under § 1983, however, "unless action pursuant to official municipal policy of some nature caused a constitutional tort.") (*citing Monell*, 436 U.S. at 691) (original quotations).

A "custom or usage" may be demonstrated by a showing of: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials; and (3) injury to the Plaintiffs by acts pursuant to the governmental entity's custom.  In evaluating the "custom" of the entity, a court does not restrict its inquiry to the written policy.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 386-87 (1989).  It is the policy applied, not the policy written, that must be scrutinized.  *Id.*

As discussed herein, the evidence viewed in a light most favorable to the non-moving party, reflects no genuine issues of material fact that Plaintiff was terminated for any reason other than his poor attendance record.  Furthermore, the evidence, when viewed in a light most favorable to the non-moving party, reflects there are no genuine issues of material fact that Plaintiff's termination was neither an act of retaliation, nor a reflection of a policy or custom of Garland County to terminate in retaliation.

There is no evidence that any policy of Garland County caused

the alleged violation of Plaintiff's Constitutional rights.  The Plaintiff claims that Defendant told him he was being fired for the letter he wrote about the Finance Committee.  That is the only evidence that could be construed to reflect a wrongful ground for termination.  However, it falls short of constituting a genuine issue of material fact as to the existence of any policy, official or unofficial, of Garland County.  (doc. 23 Ex. E, 88; Ex. K, Rynders Aff., para. 8).  Beyond this alleged statement, there is no evidence that Defendant terminated Plaintiff in retaliation for his conduct for a reason other than Plaintiff's poor attendance record. There is absolutely nothing that reflects any policy of Garland County to terminate an employee in retaliation for exercising his Constitutional rights.

The facts taken in the light most favorable to the non-moving party provides no genuine issues of material fact as to the existence of any policy, custom, or usage, which either authorizes or directs the termination of a Road Department employee for exercising his Constitutional rights. *See Ware v. Jackson County*, 150 F.3d 873, 880 (8th Cir. 1998) (finding a "policy" is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official final authority on such matters, and a "custom" is a continuing widespread, persistent pattern of unconstitutional misconduct by the governmental employees).

Accordingly, Defendant's Summary Judgment motion as to Plaintiff's retaliation claims under 42 U.S.C. § 1983 and the ACRA against Defendant in his official capacity is **GRANTED** and these claims are **DISSMISED WITH PREJUDICE.**

### C.   FMLA Individual and Official Capacity Claims

Plaintiff alleges Defendant, in his individual and official capacities, violated his rights under the FMLA on grounds of interference and retaliation.  The FMLA provides eligible employees a total of twelve weeks of leave during any twelve-month period because of serious health condition that makes the employee unable to perform the functions of the position of such employee. *29 U.S.C. § 2612(a)(1)(D)*.  A serious health condition is any illness, injury, impairment, or physical or mental condition that involves either inpatient care in a hospital, hospice, or residential medical care facility; or continuing treatment by a health care provider. *See Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008) (*quoting 29 U.S.C. § 2611(11)*).

Employees can bring two types of claims under the FMLA: interference and retaliation. *See Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006).  Interference claims are claims in which an employee alleges that his employer denied or interfered with his substantive rights under the FMLA. *Phillips*, 547 F.3d at 909 (*citing 29 U.S.C. § 2615(a)(1)-(2)*).  Retaliation claims are claims in which the employee alleges that the employer discriminated

14

against him for exercising his FMLA rights.  *Id.*

"In order to state a claim for interference under the FMLA, [Rynders] must have given notice of [his] need for FMLA leave." *Id.* When an employee gives notice, it is not necessary for the employee to mention by name the FMLA, but the employee must express both the need and reason for the leave. *See* 29 C.F.R. § 825.302(c).  An "employer's duties are triggered when an employee gives enough information to put the employer on notice that the employee may be in need of FMLA leave." *Thorson v. Gemini, Inc.*, 205 F.3d 370, 381 (8th Cir. 2000).  "The employer must be made aware that the absence is due to a serious illness so the employer can distinguish it from ordinary 'sick-days,' or even malingering, as a type of unusual and privileged absence." *Rask v Fresenius Med. Care N. Am.*, 509 F.3d 466, 472 (8th Cir. 2007).  "To hold otherwise would create an unreasonable burden for employers, requiring them to investigate virtually every absence to ensure that it does not qualify for FMLA leave." *Id.*

If the need for leave is foreseeable, an employee must give his employer no less than 30 days advance notice.  *See 29 U.S.C. 2612(e)(1)(2)(B); 29 C.F.R. § 825.302.*  If the need for leave is unforeseeable, an employee must give his employer notice as soon as practicable, but within no more than two working days of learning of the need for leave. *29 C.F.R. § 825.303.*

Plaintiff contends he provided Defendant with sufficient and

15

timely notice of his need for FMLA leave, and that Defendant failed to give him notice of his FMLA rights, thereby interfering with the exercise of his rights under the FMLA.  Plaintiff also contends his serious health condition caused his poor attendance, and Defendant's termination of his employment because of his attendance was also in violation of his rights under the FMLA.

Whether Plaintiff's rights under the FMLA were violated is conditioned on whether he was entitled to FMLA leave, which is conditioned on whether Plaintiff provided sufficient notice to Defendant that he was entitled to leave under the FMLA.  Only if, and after, Plaintiff provided adequate and timely notice would the Court need to examine whether Defendant defaulted on any obligation to inquire further.

Timeliness and adequacy of notice are standards dependent on the facts of each case, therefore the totality of the surrounding circumstances will be reviewed to determine whether sufficient notice was given.  *See Scobey v. Nucor Steel-Arkansas*, 580 F.3d 781, 787 (8th Cir. 2009) (*citing 29 C.F.R. § 825.303(b)*).  A review of the circumstances as presented by the evidence in this case indicates that there is no genuine issue of material fact that Plaintiff did not provide Defendant with adequate notice that he suffered from a serious health condition or that he was requesting FMLA leave.

The Court finds no evidence supporting Plaintiff's claim that

16

either Defendant was aware of his alleged serious health condition, or that adequate notice was provided that would indicate Defendant should have been aware of the condition.  The evidence surrounding the communications of the parties are all void of any specific cause of Plaintiff's health condition.  The written correspondence between the parties, including notes from Plaintiff's doctor to the Road Department, do not specify the reason for Plaintiff's visits to the doctor; any special needs of Plaintiff; or anything that would provide notice of something more than an ordinary "sick-day."  *See Rask*, 509 F.3d at 47;  s*ee also Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 992-93 (8th Cir. 2005) (holding that two doctor's notes stating that employee was "advised to remain off work" were inadequate because they did not mention the nature of illness).

Furthermore, nothing about Plaintiff's visits to his doctor including the number of visits, frequency of visits, type of doctor seen, or care received, can be construed as providing notice to Defendant that Plaintiff may be entitled to FMLA leave.  *See Spangler V. Federal Home Loan Bank of Des Moines*, 278 F.3d 847, 852-53 (8th Cir. 2002) (employee's statement about her absence being due to a recurring health condition was sufficient notice when the employer had known for many years that employee's condition had periodically necessitated time off work).  Likewise, no evidence regarding Plaintiff's interactions with the Road Department indicate there was reason for Defendant to believe Plaintiff may be entitled

to FMLA leave.

Plaintiff alleges that he spoke to the Road Department about his health, including one occasion where he discussed the possibility of seeing a specialist outside the state. These allegations, when viewed under the totality of the circumstances, in a light most favorable to the non-moving party, would not substantiate that adequate or timely notice was provided to the Defendant. The facts indicate that Defendant was unaware of any existing serious health condition suffered by Plaintiff, or that any of Plaintiff's prior absences or tardies were attributed to Plaintiff's health conditions. The evidence also shows that Plaintiff had a significant number of absences and tardies that were not authorized or excused, and that no attempt was made prior to or following the occurrences to have them authorized or excused, including requesting FMLA leave. Furthermore, Plaintiff admits his absences and tardies are due in part to the alleged harassment he faced, a ground not protected under the FMLA.

Viewing the evidence of the case under the totality of the surrounding circumstances, in a light most favorable to the non-moving party, there is no genuine issues of material fact that Defendant did not receive adequate or timely notice that the Plaintiff may be eligible for FMLA leave.

Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's FMLA claims against Defendant, in his official and

18

individual capacity, is **GRANTED** and these claims are **DISSMISSED WITH PREJUDICE.**

### D.   State Law Claims

Having granted the summary judgment motion on the federal law claims, the Court declines to retain jurisdiction on the state law claims.  28 U.S.C. § 1367(c)(3).  Accordingly, Plaintiff's claims for witness tampering and retaliatory transfer under Arkansas felony-tort statute and the ACRA of 1993, counts III and IV, respectively, are **DISMISSED WITHOUT PREJUDICE** as to Plaintiff's right to file them in state court.

## IV.  Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment (doc. 15) is **GRANTED,** and Plaintiff's Complaint (doc. 1) is **DISMISSED.**  Plaintiff's claims brought pursuant to 42 U.S.C. § 1983, the ACRA, and the FMLA are **DISMISSED WITH PREJUDICE.**  Plaintiff's claims brought pursuant to Arkansas felony-tort statute (Count III) and for retaliatory transfer under the ACRA (Count IV) are **DISMISSED WITHOUT PREJUDICE** to Plaintiff's right to file them in state court.

IT IS SO ORDERED this 21st day of September, 2010.


*/s/ Robert T. Dawson*
Honorable Robert T. Dawson
United States District Judge